UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STEPHANIE D.,

                          Plaintiff,

v.                                                      3:20-CV-0768
                                                        (ML)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                            OF COUNSEL:

LACHMAN, GORTON LAW FIRM                                PETER A. GORTON, ESQ.
  Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, New York 13761

SOCIAL SECURITY ADMINISTRATION                          AMY BLAND, ESQ.
  Counsel for Defendant                                 Special Assistant U.S. Attorney
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

MIROSLAV LOVRIC, United States Magistrate Judge

## MEMORANDUM-DECISION and ORDER

Plaintiff Stephanie D. ("Plaintiff"), brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security

("Defendant" or "Commissioner"), denying her application for Supplemental Security Income

("SSI") benefits.  (Dkt. No. 1.)  This case has proceeded in accordance with General Order 18 of

this Court which sets forth the procedures to be followed when appealing a denial of Social

Security benefits.  Currently before the Court are Plaintiff's motion for judgment on the

pleadings (Dkt. No. 11) and Defendant's motion for judgment on the pleadings (Dkt. No. 16). For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.  The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on July 21, 1987, making her 29 years old on the alleged onset date and application filing date, and 31 years old at the time of the unfavorable ALJ decision (Administrative Transcript ("T.") 20-21, 32, 49, 111.)  Plaintiff has an eleventh-grade education, did not complete a GED or vocational training, and is able to communicate in English.  (T. 20, 32-33.)  Plaintiff has no past relevant work experience.  (T. 20, 33.)  In her application, Plaintiff alleged disability beginning January 24, 2017.  (T. 12, 50.)  Plaintiff has not engaged in substantial gainful work since her alleged disability began.  (T. 12, 33, 57.)  Plaintiff has severe impairments due to depression, generalized anxiety disorder ("GAD"), bipolar II disorder with psychotic features, post-traumatic stress disorder ("PTSD"), dissociative disorder, obsessive-compulsive disorder ("OCD"), panic disorder with agoraphobia, and unspecified learning disorder.  (T. 13.)

### B.    Procedural History

On January 24, 2017, Plaintiff filed an application for SSI benefits alleging disability beginning January 24, 2017, due to depression, multiple personality disorder, and bipolar disorder.  (T. 111-113, 125.)  Plaintiff's application was denied initially on April 25, 2017.  (T. 10, 60.)  Plaintiff requested a hearing, which was held on March 21, 2019, before Administrative Law Judge ("ALJ") Stanley K. Chin.  (T. 10, 21, 28-48.)  The ALJ issued an unfavorable

decision on April 26, 2019.  (T. 10-21.)  This became the Commissioner's final decision on May

20, 2020, when the Appeals Council denied Plaintiff's request for review.  (T. 1-3.)

###### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following ten findings of fact and

conclusions of law.  (T. 10-21.)  First, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since her application date of January 24, 2017.  (T. 12.)  Second, the ALJ found

that Plaintiff had the following eight severe impairments: (1) depression, (2) GAD, (3) bipolar II

disorder with psychotic features, (4) PTSD, (5) dissociative disorder, (6) OCD, (7) panic disorder

with agoraphobia, and (8) generalized learning disorder.  (T. 13.)  The ALJ also found that

Plaintiff had the non-severe impairment of obesity and non-medically determinable impairments

of leg cramps, feet swelling, and scoliosis.  (*Id*.)  Third, the ALJ found that Plaintiff did not have

an impairment or combination of impairments that met or medically equaled the severity of one

of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  (T. 13-15.)

More specifically, the ALJ considered Listings 12.04 (bipolar and related disorders), 12.06

(anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders),

12.11 (neurodevelopmental disorders), and 12.15 (trauma and stressor related disorders).  (*Id*.)

The ALJ concluded that Plaintiff did not satisfy paragraphs B or C criteria.  (T. 14-15.)  Fourth,

the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform

> a full range of work at all exertional levels but with the following
> nonexertional limitations: occasional use of moving machinery and
> exposure to unprotected heights.  She can perform short and simple
> routine instructions and tasks performed in a work environment
> free of fast-paced production requirements, involving only simple
> work related decisions, and infrequent and gradual workplace
> changes.  She can perform work that is isolated from the public,
> with occasional interaction with supervisors and occasional
> interaction with coworkers.

(T. 15-20.)  Fifth, the ALJ found that Plaintiff has no past relevant work.  (T. 20.)  Sixth, the ALJ

found that Plaintiff was born in 1987, and was 29 years old, which is defined as a younger

individual age (between age 18 and 49), on the date the application was filed.  (*Id.*)  Seventh, the

ALJ found that Plaintiff has a limited education and is able to communicate in English.  (*Id.*)

Eighth, the ALJ found that transferability of job skills is not an issue to the determination of

disability because Plaintiff does not have past relevant work.  (*Id.*)  Ninth, the ALJ found that

considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in

significant numbers in the national economy that she can perform.  (T. 20-21.)  More

specifically, the vocational expert ("VE") testified that, given these factors, Plaintiff would be

able to perform the requirements of representative occupations such as laundry worker,

warehouse worker, and housekeeping cleaner.  (T. 21.)  Tenth, the ALJ therefore concluded that

Plaintiff had not been under a disability since January 24, 2017.  (*Id.*)

> **D.     The Parties' Briefings on the Motions**

> **1.     Plaintiff's Motion for Judgment on the Pleadings**

Generally, Plaintiff makes the following two arguments in support of her motion for

judgment on the pleadings: (1) the ALJ's RFC determination is not supported by substantial

evidence, and (2) Defendant did not satisfy her step five burden that jobs exist in significant

numbers in the national economy that Plaintiff can perform.  (*See generally* Dkt. No. 11 at 8-25

[Pl.'s Mem. of Law].)

With respect to Plaintiff's first argument, Plaintiff asserts that the ALJ erred in

formulating the RFC determination in the following four respects: (1) the ALJ failed to properly

weigh the opinion of state agency consultant, Dr. Fassler, (2) the ALJ improperly gave Dr.

Moore's opinions only "some weight," (3) the ALJ improperly gave the third-party statements

only "some weight," and (4) the ALJ's errors were prejudicial.  (Dkt. No. 11 at 11-22.)  More

specifically, Plaintiff argues that the ALJ erred by (a) failing to specify the amount of weight

given to the opinion of Dr. Fassler, and (b) Dr. Fassler's opinion itself was flawed because he

found significantly fewer limiting restrictions than Dr. Moore, the examining consulting

psychologist, even though the only available evidence upon which Dr. Fassler could have relied

was Dr. Moore's examination and opinions.  (*Id*.)  In addition, Plaintiff argues that the ALJ's

assignment of "some weight" to Dr. Moore's opinions is not supported by substantial evidence

because (a) when Dr. Fassler's opinion is excluded, Dr. Moore's opinion stands uncontradicted,

(b) the ALJ arbitrarily substituted his own lay judgment by looking at the same evidence (i.e.,

Plaintiff's reported functioning abilities and ability to perform some tasks during the

psychological examination) as Dr. Moore but reaching an alternative conclusion, (c) the

functioning abilities that Plaintiff reports do not support the ALJ's RFC conclusion and are

largely irrelevant to her psychiatric issues that would impact her ability to work, and (d) the ALJ

erred using Plaintiff's lack of, or inconsistent, mental health treatment against her without

considering why Plaintiff's mental health treatment was limited or inconsistent.  (*Id*.)  Moreover,

Plaintiff argues that the ALJ erred in giving third-party statements—from Plaintiff's father, a

nonmedical source—only some weight because (a) the regulations permit consideration of

opinions from nonmedical sources, and (b) the ALJ's stated reason for only giving "some

weight"—because Plaintiff's father did not perform medical examinations and testing—was also

applicable to the opinion of Dr. Fassler (who also did not perform an objective medical exam or

testing).  (*Id*.)  Further, Plaintiff argues that these errors are prejudicial because the RFC does not

take into account the full extent of Plaintiff's mental limitations (i.e., marked impairments in

sustaining concentration and performing at a consistent pace, marked limitations in sustaining an

ordinary routine and regular attendance at work, and marked limitations in interacting adequately

with supervisors, coworkers, and the public).  (*Id*.)

Second, Plaintiff argues that Defendant did not satisfy her burden at step five to establish

that jobs exist in significant numbers that Plaintiff can perform.  (Dkt. No. 11 at 22-25.)  More

specifically, Plaintiff argues that, on cross examination the vocational expert ("VE")

acknowledged that the job numbers she testified to "would also be for the OES [*Occupational*

*Employment Survey*] and not specific to DOT [*Dictionary of Occupational Title* codes]."  (*Id*.)

Plaintiff argues that OES group job numbers typically include a broad range of jobs including

those that fall outside a claimant's abilities as established in his/her RFC.  (*Id*.)  As a result,

Plaintiff argues that Defendant failed to satisfy her burden because there is no evidence that the

OES codes used by the VE did not include jobs beyond those that Plaintiff is capable of

performing.  (*Id*.)

## 2.    Defendant's Motion for Judgment on the Pleadings

Generally, Defendant makes two arguments in support of her motion for judgment on the

pleadings.  (*See generally* Dkt. No. 16 at 4-23 [Def.'s Mem. of Law].)

First, Defendant argues that substantial evidence supports the ALJ's RFC determination.

(Dkt. No. 16 at 4-23.)  More specifically, Defendant argues that the ALJ properly weighed Dr.

Fassler's opinion in finding that Plaintiff could perform unskilled work because (a) failing to

identify the specific weight given to Dr. Fassler's opinion was harmless and a specific

delineation of weight would not change the outcome, (b) the ALJ considered the supportability

and consistency factors required by 20 C.F.R. § 416.927(c)(2) and (3), and properly considered

Plaintiff's daily activities when considering her credibility and capacity to perform work-related

activities, and (c) the ALJ considered the opinions of Dr. Fassler and Dr. Moore—neither of

whom are treating sources—and crafted the RFC consistent with the record as a whole, (d) the ALJ correctly noted that, in addition to Dr. Moore's consultative examination findings, Dr. Fassler considered the March 2017 treatment note and Plaintiff's father's report about her activities, functioning, and symptoms, (e) the ALJ and Dr. Fassler appropriately considered Plaintiff's lack of mental health treatment when evaluating Plaintiff's subjective allegations, (f) the ALJ addressed the evidence received after Dr. Fassler's opinion, reasonably found that neither of these reports indicate a significant change in Plaintiff's functioning, and, in any event, included additional limitations on Plaintiff's functioning in the RFC finding, (g) Dr. Fassler provided a sufficient narrative with his opinion and included an explanation that Plaintiff could perform simple work with limited interpersonal contacts, (h) in formulating the RFC, the ALJ accounted for Dr. Fassler's opinion—that Plaintiff had a marked limited in her ability to interact appropriately with the general public—which included a requirement that Plaintiff be isolated from the public, and (i) the ALJ's findings, which were supported by substantial evidence— namely the opinion of Dr. Fassler, and, in part, the opinion of Dr. Moore—are conclusive and there was no opinion from a treating source in this case.  (*Id*.)  In addition, Defendant argues that the ALJ reasonably gave some weight to Dr. Moore's opinions because (a) the ALJ cited, *inter alia*, Plaintiff's reported daily activities, performance at consultative examinations, and engagements with her providers and family, as evidence weighing against the restrictive limitations set forth by Dr. Moore, (b) Plaintiff does not point to any evidence supporting her interpretation that Dr. Moore's opinions of marked or moderate-to-marked limitations are inconsistent with the RFC found by the ALJ, (c) although Dr. Moore's opinions—which related to examinations that occurred approximately two years apart—were consistent with one another, the ALJ discussed both reports and opinions in detail and Dr. Moore was not a treating

physician, (d) Dr. Moore's examinations of Plaintiff contained both normal and abnormal mental

health findings and Plaintiff is improperly asking the Court to re-weigh the evidence in her favor,

(e) failing to mention Dr. Moore's programmatic expertise is not cause for remand where, as

here, the ALJ gave sufficient reasoning for assigning some weight to Dr. Moore's opinion and

the regulations required the ALJ to consider whether Plaintiff's daily activities were consistent

with her reports of debilitating mental health limitations, and (f) the ALJ is permitted to consider

Plaintiff's lack of mental health treatment in evaluating her mental limitations.  (*Id*.)  Moreover,

Defendant argues that the ALJ properly weighed and discussed the submission from Plaintiff's

father, and assigned it some weight because he did not directly speak to any functional

limitations beyond those that were found elsewhere in the record.  (*Id*.)  Finally, Defendant

argues that the ALJ did not err in formulating the RFC because restricting Plaintiff from

interacting with the public but allowing for occasional interaction with supervisors and

coworkers was supported in the record by (a) Plaintiff's functioning at the consultative

examination wherein she was cooperative and had a fair manner of relating socially, (b)

Plaintiff's reported activities of walking her children to the bus, shopping with her family, and

getting along fairly well with her family, and (c) Dr. Fassler's conclusion that Plaintiff had a

marked limitation in dealing with the public but only moderate limitations with respect to dealing

with coworkers and supervisors.  (*Id*.)

Second, Defendant argues that substantial evidence supports the ALJ's step five

determination.  (Dkt. No. 16 at 23-26.)  More specifically, Defendant concedes that the VE

testified to three occupations—laundry worker, warehouse worker, and housekeeping cleaner—

that a person with Plaintiff's background and RFC could perform, and that the number of jobs

that the VE initially testified existed in the national economy for the positions of housekeeping

cleaner and warehouse worker, actually came from job groupings found in the OES.  (*Id.*)
However, Defendant argues that (a) "a vocational expert is not required to identify with
specificity the figures or sources supporting his conclusion" and the cases that Plaintiff cited do
not stand for a bright line rule that any reliance on aggregate data or OES groupings deprives a
decision of substantial evidence or otherwise directs remand, (b) remand is not required because
the VE identified over nine hundred thousand positions—even if based on OES groupings—far
in excess of what must be shown at step five, and (c) Plaintiff waived her argument that the VE
inadequately supported her testimony as to job numbers because she did not raise it at the
hearing.  (*Id.*)

### 3.    Plaintiff's Reply

Plaintiff argues that (1) the Court may overturn an ALJ's decision when, like here, it is
based on the misapplication of the law; (2) the ALJ failed to evaluate Dr. Fassler's opinion
despite the regulatory mandate that required the ALJ to evaluate every medical opinion received;
(3) the regulations state that the weight given to a non-examining medical source depends on the
degree of explanation provided, but the ALJ failed to (a) discuss the degree of explanation
provided by Dr. Fassler (a non-examining medical source), and (b) reconcile contradictions
between the RFC and Dr. Fassler's opinion that Plaintiff needs limited interpersonal contact; (4)
pointing out the factual impossibility of Dr. Fassler adopting an opinion different from that of
Dr. Moore because there was no additional medical evidence upon which Dr. Fassler could have
relied, is not a request by Plaintiff that the Court re-weigh the evidence; (5) Defendant may not
make *post hoc* rationalizations for the ALJ's failure to consider reasons for Plaintiff's lack of
treatment before using the lack of treatment as basis for rejecting Dr. Moore's opinion; (6) Dr.
Fassler's "narrative explanation" that Plaintiff could do simple work with limited interpersonal

contacts, is not a medical opinion that the ALJ was permitted to rely on; (7) the Second Circuit is still using the overwhelmingly compelling standard as recently as the year 2020 and the ALJs are not medical experts and cannot arbitrarily substitute their judgment for that of competent medical opinion; (8) pursuant to Defendant's own policies, marked mental impairments are inherently disabling; and (9) Defendant's arguments about the ALJ's errors in assessing the limitations to interpersonal relations are internally inconsistent.  (Dkt. No. 19 at 1-5 [Pl.'s Reply].)

## II.      APPLICABLE LEGAL STANDARDS

### A.      Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984); *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (Kahn, J.).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams ex*

*rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more

than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229

(1938)); *Featherly*, 793 F. Supp. 2d at 630.

      "To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence

supports the ALJ's findings they must be sustained "even where substantial evidence may

support the plaintiff's positions and despite that the court's independent analysis of the evidence

may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court

cannot substitute its interpretation of the administrative record for that of the Commissioner if

the record contains substantial support for the ALJ's decision.  *Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

      **B.**     **Standard for Benefits**[1]

      To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or

she is "unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

---

[1]     The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and
Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited
interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir.
1983) (citation omitted).

has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 1382c(a)(3)(A) (2015).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be
> hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or combination
> of impairments; (3) whether the impairment meets or equals the severity
> of the specified impairments in the Listing of Impairments; (4) based on a
> "residual functional capacity" assessment, whether the claimant can
> perform any of his or her past relevant work despite the impairment; and
> (5) whether there are significant numbers of jobs in the national economy
> that the claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

### C.    Standard Regarding RFC Determinations

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC

is the individual's maximum remaining ability to do sustained work activities in an ordinary

work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means

eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, 11-
CV-1386, 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (D'Agostino, J.) (citing *Melville v.
Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)); *accord Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29,
33 (2d Cir. 2013); *Babcock v. Berryhill,* 17-CV-00580, 2018 WL 4347795, at *13 (N.D.N.Y.
Sept. 12, 2018) (Sannes, J.); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016)
(Dancks, M.J.).

In rendering a RFC determination, the ALJ must consider objective medical facts,
diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective
symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945;
*see Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted) ("When determining a
claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations
into account, but is not required to accept the claimant's subjective complaints without question;
he may exercise discretion in weighing the credibility of the claimant's testimony in light of the
other evidence in the record."); *Kirah D. v. Berryhill*, 18-CV-0110, 2019 WL 587459, at *8
(N.D.N.Y. Feb 13, 2019) (Hummel, M.J.) ("When evaluating a claim seeking disability benefits,
factors to be considered by the ALJ include objective medical facts, clinical findings, the treating
physician's diagnoses, subjective evidence of disability, and pain related by the claimant.");
*Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, J.) (citing *LaPorta v. Bowen*,
737 F. Supp. 180, 183 (N.D.N.Y. 1990) (McAvoy, J.)) ("In assessing RFC, the ALJ's findings
must specify the functions plaintiff is capable of performing, conclusory statements regarding
plaintiff's capacities are not sufficient.").  An ALJ must specify the functions a plaintiff is
capable of performing, and may not simply make conclusory statements regarding a plaintiff's
capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010) (Kahn, J.); *accord*

*Stephens,* 200 F. Supp. 3d at 361; *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (Sharpe, J.)*; Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta*, 737 F. Supp. at 183).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, 17-CV-1266, 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (Dancks, M.J.) (citing SSR 96-8p, 1996 WL 374184, at *7).

###### D.      Standard at Step Five

The burden shifts to the Commissioner at Step Five "to show there is other work that [the claimant] can perform."  *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and] . . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)).  "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 211 (N.D.N.Y. July 7, 2009) (Mordue, J.) (citing *Melligan v. Chater*, 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

The Second Circuit has acknowledged that because the job codes in the Dictionary of Occupational Titles ("DOT") "do not report the number of available jobs in the national

economy, VEs 'must obtain additional information to assess whether positions exist for the occupations disability claimants can still perform.'" *Walker v. Colvin*, 15-CV-0465, 2016 WL 4768806, at *7 (N.D.N.Y. Sept. 13, 2016) (Hummel, M.J.) (quoting *Vandermark v. Colvin*, 13-CV-1467, 2015 WL 1097391, at *10 (N.D.N.Y. Mar. 11, 2015) (Sharpe, J.); citing *Brault*, 683 F.3d at 446).  In *Brault*, the Second Circuit also noted "the marked absence of any applicable regulation or decision of this Court requiring a vocational expert to identify with greater specificity the source of his figures or to provide supporting documentation" and concluded "[t]he ALJ did not need to find specific numbers of jobs—all he was required to do was find that 'substantial' positions exist." *Brault*, 683 F.3d at 450, n.6.

## III.     ANALYSIS

### A.     Whether the RCF is Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 16 at 4-23.)  The following is intended to supplement but not supplant Defendant's reasons.

The ALJ's failure to assign a specific weight to the opinion of Dr. Fassler was harmless because the ALJ thoroughly considered the opinion and properly assessed factors supporting (and detracting from) that opinion.  *Cottrell v. Colvin*, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016) (noting that an error is considered harmless where proper consideration of the physician's opinion would not change the outcome of the claim) (citing *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010));  *Camarata v. Colvin*, 14-CV-0578, 2015 WL 4598811, at *16 (N.D.N.Y. July 29, 2015) (D'Agostino, J.) (denying the request for remand because application of the correct legal standard would not change the outcome); *Blabac v. Comm'r of Soc. Sec.*, 08-CV-0849, 2009 WL 5167650, at *9 (N.D.N.Y. Dec. 18, 2009) (Sharpe, J.) (collecting cases which indicate

harmless error where the opinions that the ALJ failed to weigh either did not conflict with the

ALJ's findings or written consideration of the opinions would not have changed the outcome of

the ALJ's decision); *Ryan v. Astrue*, 650 F. Supp. 2d 207, 217 (N.D.N.Y. 2009) (Kahn, J.)

(finding harmless error where the ALJ improperly discounted the treating physician's opinion,

but still included the opined limitations from that opinion in the RFC, so remand would serve no

purpose).

In addition, the ALJ considered the supportability and consistency factors set forth in 20

C.F.R. § 416.927(c)(3) and (4).  More specifically, when considering the opinion of Dr. Fassler,

the ALJ noted that Plaintiff's "ability to perform some tasks during [the] psychological

consultative examination and the employment determination, and perform household chores and

care for her 3 children support the opinion that she is capable of performing simple work."  (T.

19.)  In addition, the ALJ noted that Plaintiff's "symptoms but ability to interact with treatment

providers and live with her family support a work environment with no public interaction, but up

to occasional interaction with supervisors and coworkers."  (*Id.*)

Moreover, the Court finds Plaintiff's argument that Dr. Fassler was required to adopt the

opinion of consultative examiner, Dr. Moore, unpersuasive.  In addition to the opinion of

consultative examiner Dr. Moore, Dr. Fassler considered Plaintiff's reported activities of daily

living, third-party statements (from Plaintiff's father) about her symptoms or function, and

Plaintiff's medical records from Lourdes Primary Care.  (T. 50, 53, 56.)

Further, in formulating a plaintiff's RFC, an ALJ does not have to adhere to the entirety

of one medical source's opinion.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)

("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of

medical sources cited in his decision, he was entitled to weigh all of the evidence available to

make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 12-
CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (Sharpe, C.J.) (finding that it was
within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not
to another portion); *see also Dirisio v. Comm'r of Soc. Sec.*, 15-CV-1181, 2016 WL 7378930, at
*4 (N.D.N.Y. Dec. 20, 2016) (Suddaby, C.J.) (citing *Matta*, 508 F. App'x at 56) ("In formulating
the RFC, an ALJ is not required to adhere to the entirety of one medical source's opinion.");
*Wilburn v. Colvin*, 15-CV-0058, 2016 WL 1237789, at *4 (N.D.N.Y. Feb. 29, 2016) (Dancks,
M.J.) (finding that the ALJ was not obligated to incorporate all of a physician's limitations into
the RFC where he afforded the opinion "significant but not great weight").  Here, the ALJ
carefully considered the opinions and formulated a RFC that was consistent with the record as a
whole.

   Because the Court finds that the ALJ did not err in considering the report of Dr. Fassler—
thus Dr. Moore's opinion did not stand "uncontradicted"—the Court need not resolve the parties'
dispute regarding whether the "overwhelmingly compelling" standard applies.  *See Tamara M. v.
Saul*, 19-CV-1138, 2021 WL 1198359, at *8 n.8 (N.D.N.Y. Mar. 30, 2021) (Hummel, M.J.)
(holding that the "overwhelmingly compelling" standard did not apply where the opinions of Dr.
Hsue (treating physician) and Ms. Wenzinger (who completed a physical assessment of the
plaintiff) were contradicted by other medical opinions in the record).

   Further, contrary to Plaintiff's assertions, the ALJ's consideration of her mental health
treatment history—or, more appropriately, lack thereof—was appropriate.  "Where, as here, a
claimant has sought little-to-no treatment for an allegedly disabling condition, [her] inaction may
appropriately be construed as evidence that the condition did not pose serious limitations."  *Diaz-
Sanchez v. Berryhill*, 295 F. Supp. 3d 302, 306 (W.D.N.Y. 2018); *see also Talbot v. Colvin*, 14-

CV-0879, 2016 WL 320156, at *2 (N.D.N.Y. Jan. 26, 2016) (Sharpe, J.) ("[T]he record reflects that this impairment did not restrict [the plaintiff] to that degree because she never sought mental health counseling and admitted that she had the ability to work despite her depression.")

For all of these reasons, the Court finds that the RFC is supported by substantial evidence.

**B.     Whether Substantial Evidence Supports the ALJ's Determination at Step Five**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 16 at 23-26.)  To those reasons, the Court adds the following analysis, which is intended to supplement but not supplant Defendant's reasons.

"'Courts have generally held that what constitutes a 'significant number' is fairly minimal.'"  *Rosa v. Colvin*, 12-CV-0170, 2013 WL 1292145, at *9 (N.D.N.Y. Mar. 27, 2015) (Kahn, J.) (quoting *Fox v. Comm'r of Soc. Sec.,* 02-CV-1160, 2009 WL 367628, at *3 (N.D.N.Y. Feb. 13, 2009) (Scullin, J.)); *see also Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229-31 (N.D.N.Y. 2015) (Suddaby, J.) (collecting cases in which the specific number of occupations in the regional and national economy provided by the vocational experts were or were not held to be a "significant number").  However, "[n]either the Social Security Act, nor the Commissioner's Regulations or Rulings provide a definition for a 'significant' number of jobs." *Koutrakos v. Colvin*, 13-CV-1290, 2015 WL 1190100, at *21 (D. Conn. Mar. 16, 2015).  "The court is generally guided by numbers that have been found 'significant' in other cases." *Hamilton*, 105 F. Supp. 3d at 230 (citing *Koutrakos*, 2015 WL 1190100, at *21).  Courts have generally held that although "4,000 to 5,000 jobs nationally are not significant numbers . . . . numbers of jobs in the ballpark of 10,000 to 11,000 nationwide have been held significant."

*Kelly D. v. Saul*, 18-CV-1190, 2019 WL 6683542, at \*6 (N.D.N.Y. Dec. 6, 2019) (Stewart, M.J.) (citing *Hamilton*, 105 F. Supp. 3d at 230-31).

Here, the VE testified to three jobs that a hypothetical person the same age, education, and past work history as Plaintiff, with the same RFC as Plaintiff, could perform: (1) laundry worker, (2) warehouse worker, and (3) housekeeping cleaner.  (T. 43-44.)  The VE initially testified that based on the DOT codes, the position of (1) laundry worker had approximately 200,000 jobs in the national economy, (2) warehouse worker had approximately 300,000 jobs in the national economy, and (3) housekeeping cleaner had approximately 400,000 jobs in the national economy.  (*Id.*)  However, upon further examination by Plaintiff's counsel, the VE testified that the numbers of jobs initially testified to for housekeeping cleaner and warehouse worker were based on the OES codes, not DOT codes.  (T. 45-46.)  The VE clarified that the position of housekeeping cleaner had approximately 130,000 jobs in the national economy based on the DOT code.  (T. 46.)  As a result, even if the Court were to exclude the position of warehouse worker, the record still supports the ALJ's finding that jobs exist in significant numbers that Plaintiff could perform, based on the combined approximately 330,000 jobs in the national economy for the positions of laundry worker and housekeeping cleaner.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that the Commissioner's decision denying Plaintiff disability benefits is

**<u>AFFIRMED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: September  7, 2021
       Binghamton, New York

                                            Hon. Miroslav Lovric
                                            United States Magistrate Judge